UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE VINCENT J. MAYER
     RAMONA S. MAYER, DEBTORS    CASE NO. 94-11705_____

AP-2002-0655 _____

**HATCH RESPONSE AND OBJECTION TO
MAYER MOTIONS NO. 210 AND 211 AND DEMAND
FOR THEIR DENIAL AND DISMISSAL OF AP 2002-
0655, ACKNOWLEDGEMENT BY THIS COURT THAT
GENSON, HARPLEY AND LEVINE NEVER HAD LEGAL
CONSENT FROM THE HATCHES TO BE SUED IN
MAYERS BANKRUPTCY IN FLORIDA OR TEXAS, AND
THAT ALL MAYER'S CREDITORS WERE BARRED FROM
EVER COLLECTING ANYTHING UNDER FLORIDA STATU-
TORY LAW AS PROVIDED IN THE EXHIBITS, AND WITH
NO CREDITORS EVER DOCKETING CLAIMS AFTER THE
REOPENING SEPTEMBER 05, 2000,MONTHS AFTER MORE
THAN ONE STATUTE OF LIMITATION HAD ALL EXPIRED.
THE MAYERS WERE NOT ENTITLED TO SUE THE HATCHES
FOR ANY AMOUNT IN ANY STATE: THEREFORE, THE
HATCHES ARE ENTITLED TO COMPENSATION FOR DAMAGES
BY ALL 146 PARTIES AND THIS COURT SHOULD REFER
ALL GUILTY PARTIES FOR VIOLATION OF 18 USC 1346
"HONEST SERVICE" AND FOR THE PONSI SCHEME THAT
LARRY ALAN LEVICK AND GREG LOWREY "HATCHED"
ALONG WITH JAMES F. DOWDIN, ODELL MOODY, ETC.**

Now comes the Defendants Virginia D. Hatch and Billy F. Hatch

for their response and objection to the latest motions as filed

by Ms. Genson, Documents No. 210 and 211. They as always in all

the Genson pleadings, are not supported at all by cohesive narra-

tive, much less any documents to prove what she is asking the

court to do. The Hatches incorporate herein, all their previous

arguments as found in all the following Cases that this court can

easily access on PACER, because they prove unquestionably that the

Hatches proved that all Ms. Hatch's "so-called claims" in her

bankruptcy case in Dallas, were uncollectible and were therefore

"FALSE CLAIMS IN BANKRUPTCY" and the filing of them was a crime.

All judgments had either been falsely obtained, had expired out-

right and were thus no longer collectible, or had been already

discharged in a previous bankruptcy.  None of the five (5)
claims in Ms. Hatch's bankruptcy including that filed by
Harpley were anything but illegal false claims.  Abramson ruled
specifically against Mr. Harpley on April 10, 2002, and in the
hearing clearly stated that Ms. Hatch did not owe  the daughter
or Mr. Harpley <u>anything</u>!  and that everything should be returned
to Ms. Hatch.          3:98-CR-332X, N. D. Texas

| | | |
|---|---|---|
| AP-1999-3169 | " | Reed v. SCHWAB |
| Civil Rights | " | filed 02-26-2001 |
| AP 2000-3283 | " | Mayer v. HATCH |
| AP 2000-3489 | " | Reed v. HATCHES |
| 94-11705 | Florida | Mayer's CASE |
| AP-2002-0655 | " | Mayer v. REED, ETc. |
| AP 2007-3160 | N. D. Texas | MAYER V. HATCH for 100% therefore abandoning her previous claims of 1/3. |

     For continuity in this case and any subsequent appeals,
at <u>EXHIBIT "1"</u> is a copy of Document No. 210; at <u>EXHIBIT "2"</u> is a
copy  of Document No. 211 and at <u>EXHIBIT "3"</u> is a copy of this
court's order Document 213 where the court denied Genson's previo**us**
motions which asked for the very same thing, and again, she mis-
used Rule 2002-4 for NEGATIVE NOTICE, and omitted the required
standard paragraph that by law has to be included as part of the
Motion.   As one can clearly see from <u>EXHIBITS "1" and "2"</u>., the
statutory NEGATIVE NOTICE PARAGRAPH is mi**ss**ing.

     At <u>EXHIBIT "4"</u>  is  a copy of the controlling FLORIDA law
Chapter 95.11 <u>"Limitations other than for the recovery of real</u>
<u>Property"</u>.on page 7 of 18 pages, Under 95.11(2)(b) the law says:

" 95:11   Limitations <u>other than</u> for the recovery
         of real property,--Actions other than for
         recovery of real property shall be commenced
         as follows:

   (2)   <u>**WITHIN FIVE (5) YEARS:**</u>

         **(b)  A legal or equitable action on a
         <u>CONTRACT</u>, <u>OBLIGATION</u>, OR <u>LIABILITY</u> founded
         on a written instrument, except for an
         action to enforce a claim against a payment
         bond, which shall be governed by the
         applicable provisions ,,,,,,,,,,"**

**This** filing of FALSE CLAIMS BY Genson, Harpley and LeVine for

Sears and etc., (never docketed) so there is  no PROOF in the

RECORD, if the claims were ever filed much less when they were

supposedly filed and claimed as having been filed by Harpley

and LeVine and now Genson.  Therefore Ms. Genson's original

Motion to reopen had not one piece of paper to support the

Motion, as has everything she has ever filed.  She just throws

stuff up against the wall to see if it will stick and if no

body runs her out of the court house, she just continues on.

Well, clearly she had to get all parties consent before she

could reopen the case, and bring them into the Florida court.

<u>IN RE MAURER</u> clearly spells all this out for the world to see.

All the Mayer's had were simple credit card contracts, medical

bills, etc.  All those vendors had five (5) years to collect.

In addition, there is a five (5) year statute of limitations

for reopening bankruptcy cases, and it is five (5) years even

if there is fraud.  <u>EXHIBIT "5"</u>  a copy of the DOCKET SHEET

for 94-11705 clearly shows that the case was opened on December

01, 1994 and discharged on March 22, 1995; therefore, five

years later would be March 22, 2000.  Ms. Genson did not
file her motion to reopen until September 05, 2000, and
the RECORD which the Hatches had to BUY FROM JUDICIAL RESEARCH
clearly proves that Ms. Genson did not supply one piece of
paper much less a cohesive narrative, to explain why she was
petitioning the court.   This court has and the    previous Baynes
Court refused to acknowledge that in the interim from Genson's
Motion of September 05, 2000 until August 16, 2002, when
AP 2002-0655 was finally filed, that Mayer and Harpely had
both lost their claims in Ms. Hatch's bankruptcy case in Texas.
Most people after having lost twice on the very same issue
would simply GO AWAY.   At EXHIBIT "6"  is FLORIDA LAW on
"JUDGMENT LIENS ON PERSONAL PROPERTY, which is what Genson,
Harpely or LeVine had to file in Texas, once MAYER ABANDONED
ALL OF THEM AS HER LEGAL COUNSEL, and instead chose the QUILLEN
LAW FIRM IN DALLAS, TEXAS, and abandoned her 1/3 interest and
chose instead to go after 100% or the 11,792 shares as well
as all of the ANNE E. THOMAS ESTATE.   However, nobody from
Florida made any attempt to intervene and file a LIS PENDENS
or judgment for the 1/3, nor did JUDGE HARLIN DEWAYNE HALE
set aside the 1/3 or make any effort to recognize or preserve
the alleged 1/3 interest for Florida; but now in 2009, they
want their 1/3.      The law clearly states see page 2/2
under 55-604(8)      "A judgment lien on personal property
                     is required only when a judgment lien
                     certificate is filed in accordance
                     with S. 55.203 with the Department of
                     State."
So Genson, Harpley and LeVine have an unrecorded worthless
piece of paper, handed to them illegally by Judge Thomas E.

-04-

Baynes. First of all, there were no creditors who could
have collected a dime from the Mayers when the case was
reopened on September 05, 2000, and Judge Baynes knew this
and Genson, Harpley and LeVine also all know this. This
is clearly a RULE 11 violation by all these four. Judge
K. Rodney May, came along and denied them any distribution
until all the appeals were over, but they CAUSED HIM TO
RECUSE. Then this court came along and reversed all that
Judge May had done, knowing that she had no jurisdiction.
Likewise, she is held to know the statute of limitations for
credit card companies, medical providers, etc. being able to
collect in FLORIDA courts, assuming they have a judgemnt
reduced to a judgment to collect for five more years.

## CONCLUSION

It appears from the order of this court that she is
finally waking up to what has transpired in the Baynes court
and that she has inherited. None of the MAYER creditors had
judgments. If they did they were never filed on the official
record the DOCKET. It is totally void of any such recordings.
In addition, Genson failed to obtain **any consent** to be sued
in the MAYER BANKRUPTCY FILE by any of the parties, but it
was only the HATCHES who had assets that were going to be
illegally taken. It is obvious in 2009 that AP 2002-0655
was filed by Harpely and LeVine, to take the HEAT OFF REED
AND LEVICK, since Ms. Hatch had already proven she owed none
of the five claims and by AUGUST 02, 2002, she had discovered

-05-

in the house at 2005 West 16th Street, Little Rock, Arkansas, documents overlooked by the 47 JACK BOOTED THUGS, documents that she used to prove that she never owed IRS anything from the audit that lead to the disputed assessment in the first place. Therefore, Reed and LeVick and Abramson were in deep DO DO in Dallas, Texas, and once Ms. Hatch had had an opportunity to show Judge Abramson what was really going-on, she could have turned him around. He had already shown signs or turning on his own, in the hearing held April 10, 2002. Genson,Harpley and LeVine have clearly demonstrated without any help from the Hatches that they continue with this case not because of any MAYER may have ever had in the stock, but they are starving to death as lawyers and will continue to throw up on the wall anything they can find just to see if anything will stick, on which they could collect a dime. All those 146 defendants that the Hatches sued in Arkansas as still subject to prosecution. This is specifically spelled out at EXHIBIT "7". It is self-explanatory, so the court can read it for herself. It applies to all local, city, state county and federal employees in the 146 who harmed the Hatches and all the federal judges. There is no judicial immunity from "HONEST SERVICES". Denying the hatches telephone hearing privileges, for no legal reason, is just such an abuse. Five of the 11 circuits have already ruled such. It is in the U. S. Supreme Court "AS WE SPEAK" to determine if the same law can be used against the "civilian" or private parties within the 146 defendants. Time will tell. At EXHIBIT "8" is an

excerpt from the Arkansas Democrat Gazette, December 19, 2009, that proves entering into and becomeing a party to a fraudulent scheme as that planned, perpetuated, and continued by DIANE REED, WILLIAM T. NEARY, LARRY ALAN LEVICK, GREG LOWERY, MELORY GENSON, RALPH JAY HARPLEY, JAY LEVINE, ETC. JAMES F. DOWNDEN, EDWARD ODELL MOODY, AND ALL THOSE WHO ARE NOT CIVIL SERVICE PAID,IS NOTHING MORE THAN A BERNARD MAD(e)OFF PONSI SCHEME, and he has now admitted that he just kept throwing everything up on the wall and to his surprise the ATTORNEY GENERAL FOR THE STATE OF NEW YORK NOR SEC, ever showed up at his door. Bernie got too "BIG FOR HIS BRETCHES" as did U. S. District Court Judge G. Thomas Porteous, See EXHIBIT "8".    New Orleans is where KATRINA HIT, and it is also home of the 5th circuit where all the judges illegally DENIED the Hatches attempts to obtain the legal return of their illegally seized property.  LARRY ALAN LEVICK still has in his possession, 11 boxes which he repeatedly admitted that he had in his possession, and now he had either destroyed or refuses to return, because there are documents which Ms. Hatch can prove that he outright stole 6,000 shares of stock from both Ms. Hatch and Ms. Reed.  So as the "WORM TURNS", time will tell.  Clearly Levick was paid $332,541.66 for doing absolutely no work.  MARVA BULL, clearly wrote on her daily log in the FINAL REPORT, THAT SHE HERSELF wrote, filed and drove to the court house all the 36 pages in motions which is all that LeVick ever did for that fee.  But there were no creditors there just as MAYER has no creditors, so it is all "DIRTY MONEY",  Ask Judge Porteous about Dirty money.

Now, the Hatches want an order and they want it now to
EQUISERVE INC. or whoever is the current agent for WALMART
STORES INC. dismissing this whole mess, and ordering the
reissuance of the entire 11,792 shares, payment of dividends
and the setting of a hearing to order the payment of
"ACCUMULATED DAMAGES" to the Hatches for the past 11½ years.

Respectfully submitted,

_____
VIRGINIA D. HATCH, PRO SE

_____
BILLY F. HATCH, PRO SE
P. O. BOX 23318
LITTLE ROCK, ARKANSAS
        72211-23318
501-376-0524 FAX & PHONE

## CERTIFICATE OF SERVICE

This is to ceritfy that we have on this 28th day of December,
2009, provided a copy of all the foregoing to GENSON, HARPLEY
AND LEVINE.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:

MAYER, VINCENT J.,
MAYER, RAMONA S.,

CASE NO.: 94-11705-8B7

NO. 210

Debtor(s).

_____/

## DEBTORS' MOTION FOR RECONSIDERATION OF ALLOWANCE OF CLAIM NO. 4 OF SEARS ROEBUCK & CO.

### NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING

Pursuant to Local Rule 2002-4, the Court will consider this Motion, objection, or other matter without further notice or hearing unless a party in interest files an objection within twenty (20) days from the date of service of this paper. If you object to the relief requested in this paper, you must file your objection with the Clerk of the Court at Sam M. Gibbons U.S. Courthouse, 801 North Florida Avenue, Suite 727, Tampa, Florida 33602-3899, and serve a copy on the attorney, Melody D. Genson, 2750 Ringling Blvd., Suite 3, Sarasota, Florida. 34237.

If you file and serve an objection within the time permitted, the Court will schedule a hearing and you will be notified. If you do not file an objection within the time permitted, the Court will consider that you do not oppose the granting of the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

Comes Now the Debtors, Vincent J. Mayer and Ramona S. Mayer, by and through their undersigned attorney, and move this Court for reconsideration of allowance of Claim No. 4 of Sears Roebuck & Co., and as grounds therefore would state as follows:

1. That Claim No. 4 was filed on November 13, 2000 by Sears Roebuck & Co.

2. That Claim No. 4 was an unsecured claim in the amount of $3,701.78.

3. That the claimant has failed to provide sufficient documentation and proof of an open account and/or a debt owed by the Debtors to claimant.

4. That without sufficient proof of a debt owed by the Debtors, the claim should be denied.

WHEREFORE, the Debtors request that this Court reconsider the allowance of Claim No. 4 of Sears Roebuck & Co., and deny same, and for such other relief this Court finds just and equitable.

MELODY D. GENSON, Attorney at Law

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion was sent this ___ day of _____ 2009 by either electronic transmission or by U.S. Mail, postage prepaid, to the following named addresses: U.S. Trustee's Office, 501 E. Polk St., Ste. 1200, Tampa, FL 33602; Chapter 7 Trustee Ralph Jay Harpley, 1602 W. Sligh Ave., #100, Tampa, FL 33604; Dennis J. Levine, PA, P O Box 707, Tampa, FL 33601-0707; Sears Roebuck & Co., 45 Congress Street, Salem, MA 01970; Sears Roebuck & Co., 3333 BEVERLY ROAD, HOFFMAN ESTATES IL 60179 and by Certified Mail to: Sears Roebuck & Co., Attn. Bruce W. JOHNSON, President, 3333 BEVERLY RD., HOFFMAN ESTATES IL 60179.

MELODY D. GENSON, Attorney at Law
2750 Ringling Blvd., Ste. 3
Sarasota, FL 34237
(941)365-5870
Florida Bar No. 342092

EXHIBIT " 1 "
HATCH DEFENDANT'S RESPONSE TO GENSON'S LATEST MOTIONS 210 and 211 FOR RECONSIDERATION FILED 12-08-2009 BEFORE COURT RULED 12-11-09 DENYING GENSON's PREVIOUS IDENTICAL MOTIONS INCORRECTLY USING NEGATIVE NOTICE FOR THE SECOND TIME; PROVIDING "NO SUPPORT" AS ALL GENSON's MOTIONS HAVE SINCE SHE FILED TO ILLEGALLY REOPEN THE MAYER CASE SEPTEMBER 05, 2000, over ( nine) years ago when the COVER SHEET FOR DOCKET SHEETS CLEARLY STATES DATE FOR RUNNING OF 5 YEAR STATUTE OF LIMITATION FOR REOPENING OF BANKRUPTCY CASES, ESPECIALLY AFTER HAVING ALREADY LOST VERY SAME CLAIM TWICE IN Texas on 9-14-2000 and 4-10-2002 DECEMBER 28, 2009 (Dischg 1-22-1995 + 5 = 3-22-2000!)

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:

CASE NO.: 94-11705-8B7

MAYER, VINCENT J.,
MAYER, RAMONA S.,

Debtor(s).

**DEBTORS' MOTION FOR RECONSIDERATION OF ALLOWANCE
OF CLAIM NO. 6 OF RUTH SHAPIRO MSW LCSW**

NOTICE OF OPPORTUNITY TO
OBJECT AND FOR HEARING

Pursuant to Local Rule 2002-4, the Court will consider this Motion, objection, or other matter without further notice or hearing unless a party in interest files an objection within twenty (20) days from the date of service of this paper. If you object to the relief requested in this paper, you must file your objection with the Clerk of the Court at Sam M. Gibbons U.S. Courthouse, 801 North Florida Avenue, Suite 727, Tampa, Florida 33602-3899, and serve a copy on the attorney, Melody D. Genson, 2750 Ringling Blvd., Suite 3, Sarasota, Florida, 34237.

If you file and serve an objection within the time permitted, the Court will schedule a hearing and you will be notified. If you do not file an objection within the time permitted, the Court will consider that you do not oppose the granting of the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

Comes Now the Debtors, Vincent J. Mayer and Ramona S. Mayer, by and through their undersigned attorney, and move this Court for reconsideration of allowance of Claim No. 6 of Ruth Shapiro Msw Lcsw, and as grounds therefore would state as follows:

1.   That Claim No. 6 was filed on December 6, 2000 by Ruth Shapiro Msw Lcsw.

2.   That Claim No. 6 was an unsecured claim in the amount of $756.00.

3.   That the claimant has failed to provide sufficient documentation and proof of an open account and/or a debt owed by the Debtors to claimant.

4.   That without sufficient proof of a debt owed by the Debtors, the claim should be denied.

WHEREFORE, the Debtors request that this Court reconsider the allowance of Claim No. 6 of Ruth Shapiro Msw Lcsw, and deny same, and for such other relief this Court finds just and equitable.

_____
MELODY D. GENSON, Attorney at Law

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion was sent this ___ day of ___, 2009 by either electronic transmission or by U.S. Mail, postage prepaid, to the following named addressees: U.S. Trustee's Office, 501 E. Polk St., Ste. 1200, Tampa, FL 33602; Chapter 7 Trustee Ralph Jay Harpley, 1602 W. Sligh Ave., #100, Tampa, FL 33604; Dennis J. Levine, PA, P O Box 707, Tampa, FL 33601-0707; Ruth Shapiro Msw Lcsw, 3646 Birky Street, Sarasota, FL 34232; Ruth Shapiro Msw Lcsw, 2015 Rose Street, Sarasota, FL 34239.

_____
MELODY D. GENSON, Attorney at Law
2750 Ringling Blvd., Ste. 3
Sarasota, FL 34237
(941)365-5870
Florida Bar No. 342092

Not for Colleen only Ruth she Has over cited this Motion for in "9" years!

EXHIBIT "2"
HATCH DEFENDANT'S RESPONSE TO GENSON's LATEST MOTIONS 210 and 211 FOR RECONSIDERATION FILED 12-08-2009 BEFORE COURT RULED 12-11-09 DENYING GENSON's PREVIOUS IDENTICAL MOTIONS INCORRECTLY USING NEGATIVE NOTICE FOR THE SECOND TIME: PROVIDING "NO SUPPORT" AS ALL GENSON's MOTIONS HAVE SINCE SHE FILED TO ILLEGALLY REOPEN THE MAYER CASE SEPTEMBER 05, 2000, over ( nine) years ago when the COVER SHEET FOR DOCKET SHEETS CLEARLY STATES DATE FOR RUNNING OF 5 YEAR STATUTE OF LIMITATION FOR REOPENING OF BANKRUPTCY CASES, ESPECIALLY AFTER HAVING ALREADY LOST VERY SAME CLAIM TWICE IN Texas on 9-14-2000 and 4-10-2002 DECEMBER 28, 2009 (Diacha 3-22-1995 + 5 = 3-22-2000!)

No. 213

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

Vincent J Mayer
and Ramona S. Mayer,
                    Debtor.*
_____/

Case No. 8:94-bk-11705-CPM

Chapter ___7___

**ORDER**

THIS CASE came on for hearing on _____December 7_____, 2009, upon the ☐ Emergency

☑ Motion ☐ Objection ☐ Application ☐ Order to Show Cause _for Turnover of_

_Unclaimed Funds_ (Doc. _207_), filed by _the Debtors_

_____. For the reasons stated orally and recorded in open court, the ☑ Motion ☐ Objection

☐ Application ☐ Order to Show Cause is:

_____ Denied

_____ Denied as Moot

_____ Overruled

_____ Sustained

_____ Granted

_____ Approved

_____ Disapproved

_____ Discharged Favorably:

EXHIBIT " 3 "
HATCH DEFENDANT'S RESPONSE
TO GENSON's LATEST MOTIONS
210 and 211 FOR RECONSIDERA-
TION FILED 12-08-2009 BEFORE
COURT RULED 12-11-09 DENYING
GENSON's PREVIOUS IDENTICAL
MOTIONS INCORRECTLY USING
NEGATIVE NOTICE FOR THE SECOND
TIME: PROVIDING "NO SUPPORT"
AS ALL GENSON's MOTIONS HAVE
SINCE SHE FILED TO ILLEGALLY
REOPEN THE MAYER CASE SEPTEMBER
05, 2000, over ( (nine) years
ago when the COVER SHEET FOR
DOCKET SHEETS CLEARLY STATES
DATE FOR RUNNING OF 5 YEAR
STATUTE OF LIMITATION FOR
REOPENING OF BANKRUPTCY CASES,
ESPECIALLY AFTER HAVING ALREADY
LOST VERY SAME CLAIM TWICE IN
Texas on 9-14-2000 and 4-10-2002
DECEMBER 28, 2009 (Disch. 3-22-1995
+ 5 = 3-22-2000!)

Other: _Without prejudice to seek disallowance_
_of the Claims to which the funds relate,_
_if circumstances support such a motion._
The Court in its discretion may file written findings of facts and conclusions of law at a later date.

DONE and ORDERED on _____

BY THE COURT

Catherine M. Ewen

Catherine Peek McEwen
United States Bankruptcy Judge

CC: All creditors

---
* All references to "Debtor" shall include and refer to both of the debtors in a case filed jointly by two individuals.

EXHIBIT   "   _4_   "

HATCH DEFENDANT'S RESPONSE
TO GENSON's LATEST MOTIONS
210 and 211 FOR  RECONSIDERA-
TION FILED 12-08-2009 BEFORE
COURT RULED 12-11-09 DENYING
GENSON's PREVIOUS IDENTICAL
MOTIONS INCORRECTLY USING
NEGATIVE NOTICE FOR THE SECOND
TIME: PROVIDING "NO SUPPORT"
AS ALL GENSON's MOTIONS HAVE
SINCE SHE FILED TO ILLEGALLY
REOPEN THE MAYER CASE SEPTEMBER
05, 2000, over ( (nine) years
ago when the COVER SHEET FOR
DOCKET SHEETS CLEARLY STATES
DATE FOR RUNNING OF 5 YEAR
STATUTE OF LIMITATION FOR
REOPENING OF BANKRUPTCY CASES,
ESPECIALLY AFTER HAVING ALREADY
LOST VERY SAME CLAIM TWICE IN
Texas on 9-14-2000 and 4-10-2002
DECEMBER 28, 2009   (Dischg 3-22-1995
         + 5 = 3-22-2000!)

SL   pp. 95-011 - page 2 of 18
           95-11            6 of 18
           95-11(b)   ✓   7 of 18

2. For taxes due before July 1, 1999, within 6 years after the date the taxpayer either makes a substantial underpayment of tax, or files a substantially incorrect return;

3. At any time while the right to a refund or credit of the tax is available to the taxpayer;

4. For taxes due before July 1, 1999, at any time after the taxpayer has filed a grossly false return;

5. At any time after the taxpayer has failed to make any required payment of the tax, has failed to file a required return, or has filed a fraudulent return, except that for taxes due on or after July 1, 1999, the limitation prescribed in subparagraph 1. applies if the taxpayer has disclosed in writing the tax liability to the department before the department has contacted the taxpayer; or

6. In any case in which there has been a refund of tax erroneously made for any reason:

a. For refunds made before July 1, 1999, within 5 years after making such refund; and

b. For refunds made on or after July 1, 1999, within 3 years after making such refund,

or at any time after making such refund if it appears that any part of the refund was induced by fraud or the misrepresentation of a material fact.

(b) For the purpose of this paragraph, a tax return filed before the last day prescribed by law, including any extension thereof, shall be deemed to have been filed on such last day, and payments made prior to the last day prescribed by law shall be deemed to have been paid on such last day.

(4) If administrative or judicial proceedings for review of the tax assessment or collection are initiated by a taxpayer within the period of limitation prescribed in this section, the running of the period shall be tolled during the pendency of the proceeding. Administrative proceedings shall include taxpayer protest proceedings initiated under s. 213.21 and department rules.

History.--s. 20, ch. 74-382; s. 37, ch. 85-342; s. 49, ch. 87-6; ss. 29, 66, ch. 87-101; s. 4, ch. 88-119; s. 19, ch. 92-315; s. 25, ch. 94-353; s. 1, ch. 99-239; s. 10, ch. 2000-151; s. 2, ch. 2000-355; s. 1, ch. 2004-26; s. 1, ch. 2005-280.

**95.10 Cause of action arising in another state.**--When the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state.

History.--s. 18, ch. 1869, 1872; RS 1295; GS 1726; RGS 2940; CGL 4664; s. 5, ch. 74-382.

95.11 Limitations **other than** for the recovery of real property.--Actions other than for recovery of real property shall be commenced as follows:

(1) WITHIN TWENTY YEARS.--An action on a judgment or decree of a court of record in this state.

3931 Shares of Wal Mart is *personal property!*

Sold @ = $215,000.00    — No interest
just in
Harply beat!

Went up
from
9-14-
2000       $204,000.00
                    Court Rats?
in Texas denied in Total By
                    A Bramson  Order
                    4-10-2002

(2) WITHIN FIVE YEARS.--

*Mayers Crebitors did not collect in 5 years 12-01-1994 + 5 years = 12-01-1999! Dead on 9-05-2000*

(a) An action on a judgment or decree of any court, not of record, of this state or any court of the United States, any other state or territory in the United States, or a foreign country.

(b) A legal or equitable action on a contract, obligation, or liability founded on a written instrument, except for an action to enforce a claim against a payment bond, which shall be governed by the applicable provisions of ss. 255.05(10) and 713.23(1)(e).

(c) An action to foreclose a mortgage.

*Credit Cards are Contracts or Written Instruments*

(d) An action alleging a willful violation of s. 448.110.

*Certainly Dead on 8-16 2002!*

*Medical Bills are the Same* *filed NO. Claim on Docket*

*"A promise to pay"*

(3) WITHIN FOUR YEARS.--

(a) An action founded on negligence.

(b) An action relating to the determination of paternity, with the time running from the date the child reaches the age of majority.

(c) An action founded on the design, planning, or construction of an improvement to real property, with the time running from the date of actual possession by the owner, the date of the issuance of a certificate of occupancy, the date of abandonment of construction if not completed, or the date of completion or termination of the contract between the professional engineer, registered architect, or licensed contractor and his or her employer, whichever date is latest; except that, when the action involves a latent defect, the time runs from the time the defect is discovered or should have been discovered with the exercise of due diligence. In any event, the action must be commenced within 10 years after the date of actual possession by the owner, the date of the issuance of a certificate of occupancy, the date of abandonment of construction if not completed, or the date of completion or termination of the contract between the professional engineer, registered architect, or licensed contractor and his or her employer, whichever date is latest.

(d) An action to recover public money or property held by a public officer or employee, or former public officer or employee, and obtained during, or as a result of, his or her public office or employment.

(e) An action for injury to a person founded on the design, manufacture, distribution, or sale of personal property that is not permanently incorporated in an improvement to real property, including fixtures.

(f) An action founded on a statutory liability.

(g) An action for trespass on real property.

(h) An action for taking, detaining, or injuring personal property.

*Took - 11-30 Paid fine*

(i) An action to recover specific personal property.

*"Taking" person prop 4 years 12-01-94 98*

12/14/2009

APPEAL

U.S. Bankruptcy Court
Middle District of Florida (Tampa)
Bankruptcy Petition #: 8:94-bk-11705-CPM

Assigned to: Catherine Peek McEwen          Date filed: 12/01/1994    → *LOOK!*
Chapter 7                                    Date : 09/12/2000
Voluntary                                    Debtor discharged: 03/22/1995.  *3-22-95*
Asset                                        Joint debtor discharged: N/A       *+5 =*

Debtor                          represented by Melody D. Genson        *3-22-2000*
Vincent J. Mayer                              Melody D Genson, PA
P.O. Box 1148                                 2750 Ringling Boulevard, Suite 3
Sarasota, FL 34230                            Sarasota, FL 34237
SSN / ITIN: xxx-xx-8766                       941-365-5870
                                              Fax : 941-365-5872
                                              Email:
                                              melodydgenson@verizon.net

Joint Debtor                    represented by Melody D. Genson
Ramona S. Mayer                               (See above for address)
P.O. Box 1148
Sarasota, FL 34230
SSN / ITIN: xxx-xx-1522
pka
Ramona S. Johnson

Trustee                         represented by Dennis J. LeVine
R Jay Harpley                                 Dennis LeVine & Associates
PO Box 271286                                 Post Office Box 707
Tampa, FL 33688-1286                          Tampa, FL 33601-0707
813-931-1700                                  (813) 253-0777
                                              Email: theresa.byington@gmail.com

EXHIBIT " 5 "
HATCH DEFENDANT'S RESPONSE                    Dennis J LeVine, Attorney for Trustee
TO GENSON's LATEST MOTIONS                    P O Box 707
210 and 211 FOR RECONSIDERA-                  Tampa, FL 33601-0707
TION FILED 12-08-2009 BEFORE                  813-253-0777
COURT RULED 12-11-09 DENYING                  Email: theresa.byington@gmail.com
GENSON'S PREVIOUS IDENTICAL
MOTIONS INCORRECTLY USING
NEGATIVE NOTICE FOR THE SECOND                Ralph Jay Harpley, Attorney for Trustee
TIME: PROVIDING "NO SUPPORT"                  PO Box 271286
AS ALL GENSON's MOTIONS HAVE                  Tampa, FL 33688-1286
SINCE SHE FILED TO ILLEGALLY                  813-931-1700
REOPEN THE MAYER CASE SEPTEMBER               Email: rjayharpleylaw@hotmail.com
05, 2000, over ( (nine) years
ago when the COVER SHEET FOR
DOCKET SHEETS CLEARLY STATES
DATE FOR RUNNING OF 5 YEAR
STATUTE OF LIMITATION FOR
REOPENING OF BANKRUPTCY CASES,
ESPECIALLY AFTER HAVING ALREADY
LOST VERY SAME CLAIM TWICK IN
Texas on 9-14-2000 and 4-10-2002
DECEMBER 28, 2009   (Dlschg 3-22-1995
              + 5 = 3-22-2000!)

U.S. Trustee                    represented by United States Trustee - TPA7, 7
United States Trustee - TPA7, 7               PRO SE
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602
813-228-2000

*Where's Levick & Koch - NOT DISCHARGED AS*
*PARTIES!*
*LEVICK mailed fronts of STOCK Certificates for*
Filing Date     #                             *5,896 W/O*
                              Docket Text      *the Backsides*
                                               *Levine used as*
11/12/2009    208    Notice of Preliminary Hearing on Debtors' Motion for   *Exhibit for*
                     Turnover of Unclaimed Funds as Surplus Funds           *Complaint*
                     (related document(s)[207]). Hearing scheduled for 12/7/2009   *8-16-2002*
                     at 01:30 PM at Tampa, FL - Courtroom 8B, Sam M. Gibbons   *= FRAUD!*
                     United States Courthouse, 801 N. Florida Avenue. (Celli,
                     Lidia) (Entered: 11/12/2009)

11/14/2009    209    BNC Certificate of Mailing - Notice of Hearing (related
                     document(s) (Related Doc # [208])).   Service Date
                     11/14/2009. (Admin.) (Entered: 11/15/2009)

12/07/2009    212    Response to to Debtors' Motion for Turnover of

                                                                        12/14/2009

*Unclaimed Funds and to Trustee's Report of Unclaimed Funds* Filed by Billy F Hatch, Virginia D Hatch (related document(s)[207] and [206]). (Attachments: # (1) Exhibit # (2) Exhibit) (Celli, Lidia) (Entered: 12/09/2009)

12/08/2009    210      Motion for Reconsideration *of Allowance of Claim No. 4 of Sears Roebuck & Co. (With Negative Notice)* Filed by Melody D. Genson on behalf of Joint Debtor Ramona S. Mayer, Debtor Vincent J. Mayer (Genson, Melody) (Re: doc. # [198]) Modified on 12/9/2009 (Celli, Lidia). (Entered: 12/08/2009)

12/08/2009    211      Motion for Reconsideration *of Allowance of Claim No. 6 of Ruth Shapiro MSW LCSW (With Negative Notice)* Filed by Melody D. Genson on behalf of Joint Debtor Ramona S. Mayer, Debtor Vincent J. Mayer (Genson, Melody) (Re: doc. # [198]) Modified on 12/9/2009 (Celli, Lidia). (Entered: 12/08/2009)

12/11/2009    213      Order Denying Motion for Turnover *of Unclaimed Funds filed by Debtors* (Related Doc # [207]). Signed on 12/11/2009. (Celli, Lidia ) (Entered: 12/11/2009)

--------------------------------------------------------------------------------

PACER Service Center
Transaction Receipt

12/14/2009 10:17:27

PACER Login:                 Client Code:
Description: Docket Report       Search Criteria: 8:94-bk-11705-CPM Fil or Ent:
                                       filed    Doc From: 208 Doc To:
                                       888      Format: text
Billable Pages: 1                  Cost: 0.08
--------------------------------------------------------------------------------

EXHIBIT " _10_ "
HATCH DEFENDANT'S RESPONSE
TO GENSON's LATEST MOTIONS
210 and 211 FOR RECONSIDERA-
TION FILED 12-08-2009 BEFORE
COURT RULED 12-11-09 DENYING
GENSON's PREVIOUS IDENTICAL
MOTIONS INCORRECTLY USING
NEGATIVE NOTICE FOR THE SECOND
TIME: PROVIDING "NO SUPPORT"
AS ALL GENSON's MOTIONS HAVE
SINCE SHE FILED TO ILLEGALLY
REOPEN THE MAYER CASE SEPTEMBER
05, 2000, over ( (nine) years
ago when the COVER SHEET FOR
DOCKET SHEETS CLEARLY STATES
DATE FOR RUNNING OF 5 YEAR
STATUTE OF LIMITATION FOR
REOPENING OF BANKRUPTCY CASES,
ESPECIALLY AFTER HAVING ALREADY
LOST VERY SAME CLAIM TWICE IN
Texas on 9-14-2000 and 4-10-2002
DECEMBER 28, 2009     (Dischg 3-22-1995
                + 5 = 3-22-2000!)

Florida Statute

55. 5 - 6

PP - 55.604(8) page 24? '

Select Year:   2009    Go

# The 2009 Florida Statutes

| Title VI | Chapter 55 | View Entire Chapter |
|---|---|---|
| CIVIL PRACTICE AND PROCEDURE | JUDGMENTS | |

**55.604 Recognition and enforcement.**--Except as provided in s. 55.605, an out-of-country foreign judgment meeting the requirements of s. 55.603 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. Procedures for recognition and enforceability of an out-of-country foreign judgment shall be as follows:

(1) The out-of-country foreign judgment shall be filed with the clerk of the court and recorded in the public records in the county or counties where enforcement is sought.

(a) At the time of the recording of an out-of-country foreign judgment, the judgment creditor shall make and record with the clerk of the circuit court an affidavit setting forth the name, social security number, if known, and last known post-office address of the judgment debtor and of the judgment creditor.

(b) Promptly upon the recording of the out-of-country foreign judgment and the affidavit, the clerk shall mail notice of the recording of the out-of-country foreign judgment, by registered mail with return receipt requested, to the judgment debtor at the address given in the affidavit and shall make a note of the mailing in the docket. The notice shall include the name and address of the judgment creditor and of the judgment creditor's attorney, if any, in this state. In addition, the judgment creditor may mail a notice of the recording of the judgment to the judgment debtor and may record proof of mailing with the clerk. The failure of the clerk to mail notice of recording will not affect the enforcement proceedings if proof of mailing by the judgment creditor has been recorded.

(2) The judgment debtor shall have 30 days after service of the notice to file a notice of objection with the clerk of the court specifying the grounds for nonrecognition or nonenforceability under this act.

(3) Upon the application of any party, and after proper notice, the circuit court shall have jurisdiction to conduct a hearing, determine the issues, and enter an appropriate order granting or denying recognition in accordance with the terms of this act.

(4) If the judgment debtor fails to file a notice of objection within the required time, the clerk of the court shall record a certificate stating that no objection has been filed.

(5) Upon entry of an order recognizing the out-of-country foreign judgment, or upon recording of the clerk's certificate set forth above, the out-of-country foreign judgment shall be enforced in the same manner as the judgment of a court of this state.

(6) Once an order recognizing the out-of-country foreign judgment has been entered by a court of this state, the order and a copy of the judgment may be recorded in any other county of this state without further notice or proceedings, and shall be enforceable in the same manner as the judgment of a court of this state.

(7) A lien on real estate in any county shall be created only when there has been recorded in the official records of the county (a) a certified copy of the judgment, and (b) a copy of the clerk's certificate or the order recognizing the out-of-country foreign judgment. The priority of such lien will be established as of the time the latter of the two recordings has occurred.

(8) A judgment lien on personal property is acquired only when a judgment lien certificate is filed in accordance with s. 55.203 with the Department of State.

History.--s. 4, ch. 94-239; s. 77, ch. 99-251; s. 17, ch. 2000-258; s. 10, ch. 2001-154; s. 7, ch. 2005-241.

Copyright © 1995-2009 The Florida Legislature • Privacy Statement • Contact Us

**08-876 BLACK V. UNITED STATES**

DECISION BELOW:530 F.3d 596

LOWER COURT CASE NUMBER: 07-4080, 08-1072, 08-1106

QUESTIONS PRESENTED:
This Court held in McNally v. United States, 483 U.S. 350 (1987), a public corruption case, that the mail fraud statute could not be used to prosecute schemes to deprive the citizenry of the intangible right to good government. Congress responded in 1988 by enacting 18 U.S.C. § 1346, which expands the definition of a "scheme or artifice to defraud" under the mail and wire fraud statutes to encompass schemes that "deprive another of the intangible right of honest services."

Twenty years later, the courts of appeals are hopelessly divided on the application of Section 1346 to purely private conduct. In this case, the Seventh Circuit disagreed with at least five other circuits and held that Section 1346 may be applied in a purely private setting irrespective of whether the defendant's conduct risked any foreseeable economic harm to the putative victim. In the alternative, the Seventh Circuit ruled that the defendants forfeited their objection to the improper instructions by opposing the government's bid to have the jury return a "special verdict," a procedure not contemplated by the criminal rules and universally disfavored by other circuits as prejudicial to a defendant's Sixth Amendment rights.

1. Whether 18 U.S.C. § 1346 applies to the conduct of a private individual whose alleged "scheme to defraud" did not contemplate economic or other property harm to the private party to whom honest services were owed.
2. Whether a court of appeals may avoid review of prejudicial instructional error by retroactively imposing an onerous preservation requirement not found in the federal rules.

CERT. GRANTED 5/18/2009

EXHIBIT " _7_ "
HATCH DEFENDANT'S RESPONSE
TO GENSON's LATEST MOTIONS
210 and 211 FOR RECONSIDERA-
TION FILED 12-08-2009 BEFORE
COURT RULED 12-11-09 DENYING
GENSON's PREVIOUS IDENTICAL
MOTIONS INCORRECTLY USING
NEGATIVE NOTICE FOR THE SECOND
TIME: PROVIDING "NO SUPPORT"
AS ALL GENSON's MOTIONS HAVE
SINCE SHE FILED TO ILLEGALLY
REOPEN THE MAYER CASE SEPTEMBER
05, 2000, over ( (nine) years
ago when the COVER SHEET FOR
DOCKET SHEETS CLEARLY STATES
DATE FOR RUNNING OF 5 YEAR
STATUTE OF LIMITATION FOR
REOPENING OF BANKRUPTCY CASES,
ESPECIALLY AFTER HAVING ALREADY
LOST VERY SAME CLAIM TWICE IN
Texas on 9-14-2000 and 4-10-2002
DECEMBER 28, 2009    (Dischg 3-22-1995
+ 5 = 3-22-2000!)

[handwritten annotations:]
"HONEST SERVICE" By 146+
Defendants who have
VIOLATED EVERY
Right the Mother
has for
11 1/2 years

→ Honest
Service!

this is the
Crime all
146+
have +
Continue
to
Commit
against
Mother
and
"all"
Asset.
and
11 Boxes
of
Records
Held By

LEVKK

# House hears case on U.S. judge

## Cash gifts, bankruptcy fraud merit impeachment, panel told

BEN EVANS
THE ASSOCIATED PRESS

WASHINGTON — It's not the lifestyle of a typical federal judge: five or six vodka cocktails during lunch; gambling with borrowed money; bankruptcy under a phony name; and cash, trips or home repairs from lawyers and a bail bondsman with business before his court.

Witnesses in the congressional impeachment case against U.S. District Court Judge G. Thomas Porteous Jr. paint this portrait of the former Louisiana state judge who was appointed to the federal bench in 1994 by President Bill Clinton.

As Congress wrapped up several weeks of evidence-gathering hearings this week, legal experts who testified before a House task force suggested Porteous is a clear candidate to become just the eighth federal judge in U.S. history to be impeached and convicted by Congress. Lawmakers appear poised to take their advice and bring charges early next year, setting up a trial in the Senate.

"The fact is that we are discovering a pattern of misbehavior that occurred over such a long period of time that it's virtually unique in the annals of impeachment," Michael Gerhardt, a constitutional law professor at the University of North Carolina, told the House panel. "Just imagine what happens if you don't act here? What kind of precedent does that set?"

Porteous, who sits in the Eastern District of Louisiana in New Orleans, so far has offered little in his defense. And while his defense attorney, Richard Westling, acknowledges that the evidence doesn't look good, he says the House has disregarded key facts and circumstances. Porteous may have made mistakes, Westling argues, but his transgressions don't warrant impeachment.

"The presentation before the task force has been one-sided and clearly aimed at moving forward toward eventual impeachment," Westling said in an interview.

"We hope that senators will withhold judgment until we have been given a full and fair opportunity to confront the allegations in a Senate trial."

In the opening hearing,  House investigators said Porteous had racked up more than $150,000 in credit-card debt by 2000, mostly from cash advances spent in casinos.

Porteous

Two New Orleans attorneys who once worked with Porteous said they gave the judge at least $20,000 in cash gifts while he was a judge, including $2,000 stuffed in an envelope in 1999, just before Porteous decided a major civil case in their client's favor.

After they complained to Porteous about his frequent solicitations for cash and threatened to cut him off, the attorneys said, Porteous began sending court-appointed work to their firm, they said. In return, the attorneys sent some of the fees they received to the judge, they said.

At another hearing, the lawyer Porteous hired for his 2001 bankruptcy discussed how he and Porteous initially filed the judge's bankruptcy under the name "Ortous" with a hastily arranged post office box as his address, to keep his name out of the newspaper. House investigators said Porteous also lied about his debts and assets to lower his bankruptcy payments.

Later, New Orleans bail bondsman Louis Marcotte testified that he and Porteous had a long-standing relationship in which Marcotte routinely took Porteous to lavish meals at French Quarter restaurants and offered his employees to work on Porteous' cars and home. In return, Porteous manipulated bond amounts for defendants to give Marcotte the highest fees possible, said Marcotte, who served 18 months in prison on related corruption charges.

Porteous also erased criminal convictions for two of Marcotte's employees.

"I knew he was struggling ... he would have five, six Absolut [vodka] and tonics" at lunch, Marcotte testified. "I asked him for things, and he asked me for things."

The allegations against Porteous were largely uncovered during the FBI's Operation Wrinkled Robe, an investigation of state judges in Jefferson Parish, where Porteous served before winning his federal post. That six-year investigation brought 14 convictions, but Porteous was never charged.

Porteous' defense will in part focus on that fact — that he survived such an exhaustive investigation without prosecution. Porteous also is likely to argue that much of the activity in question occurred before he became a federal judge.

But the panel of legal scholars that testified this week said those circumstances are irrelevant.

They said Porteous clearly misled Congress by concealing his behavior during the vetting for his federal nomination.

"It's not even clear that removing of office is really punishing him. ... He is a judge only because the Senate voted to make him one, and they did so under false pretenses. He lied to them," Akhil Amar, a Yale Law School professor, told lawmakers. "Every day that a fraud continues to claim the title of a federal judge and draw his federal salary is an affront to citizens and taxpayers."

The House needs a simple majority to approve impeachment; the Senate needs a two-thirds vote to convict.

The last time both happened was in 1989, when two judges, Walter Nixon of Mississippi and Alcee L. Hastings of Florida, were removed from office. Hastings, a Democrat, went on to win a seat in Congress, where he still serves.

EXHIBIT "8"

HATCH DEFENDANT'S RESPONSE TO GENSON'S LATEST MOTIONS 210 and 211 FOR RECONSIDERATION FILED 12-08-2009 BEFORE COURT RULED 12-11-09 DENYING GENSON'S PREVIOUS IDENTICAL MOTIONS INCORRECTLY USING NEGATIVE NOTICE FOR THE SECOND TIME; PROVIDING "NO SUPPORT" AS ALL GENSON'S MOTIONS HAVE SINCE SHE FILED TO ILLEGALLY REOPEN THE MAYER CASE SEPTEMBER 05, 2000, over ( (nine) years ago when the COVER SHEET FOR DOCKET SHEETS CLEARLY STATES DATE FOR RUNNING OF 5 YEAR STATUTE OF LIMITATION FOR REOPENING OF BANKRUPTCY CASES, ESPECIALLY AFTER HAVING ALREADY LOST VERY SAME CLAIM TWICE IN Texas on 9-14-2000 and 4-10-2002 DECEMBER 28, 2009 (Diacha 3-22-1995 + 5 = 3-22-2000!)